May it please the court. My name is Anna Well-Occolino for the EEOC as the appellant. I aspire to reserve three minutes of my 13 minutes for rebuttal and then counsel for the state of Arizona will have seven minutes. The EEOC raised three issues on appeal in this case. The first concern the district court's dismissal of the 19 claimants for purported failure to satisfy our pre-suit requirements. The second concern the district court's timeliness rulings and the third was about the harassment claim as to Sophia Hines. With this court's permission I'd like to start with what I think we all agree is the heart of the issue on appeal and that concerns the district court's dismissal of the 19 claimants. We forwarded two arguments in our appeal as to why the dismissal was erroneous. In the first we contended that we did satisfy all of the pre-suit requirements under section 706 of title 7. We received a charge of discrimination and retaliation. Well obviously we know after mock mining that the court does have some jurisdiction to look at conciliation efforts, right? That's true. There's a limited bare-bones review. And the court didn't, Judge Bolton didn't have the benefit of that particular case. But that being said, so your argument, so you can't argue at this point that a court can't look at it but what you can argue is that it should just be remanded back to you if you didn't do enough, right? Yes, but I'd first like to clarify what GEO has said about mock mining because when we filed our 28J about mock mining we said the mock mining really disposes of the heart of the issue in this case, which is the dismissal. There's very limited review but even if the EOC didn't do everything we should have done under the statute you can no longer dismiss out people when we fail to conciliate. And in response to GEO's response to our 28J said that we had made an egregious misrepresentation to this court by suggesting that the district courts dismissal of the 19 claimants was based on a failure to conciliate. So as I understand GEO's argument on appeal, their argument is that the district courts dismissal had nothing to do with a failure to conciliate in good faith. So I think they've abandoned the arguments which I truly do think that they made in the district court in their answer to our complaint and their motion for partial summary judgment that during conciliation we had to name all the women, we had to say what happened to them, we had to give evidence about what the damages were, and also EEOC you asked for too much money and you're unreasonable. I kind of sense that and I have this concern and I'm not sure that it's dispositive of the case but the EEOC you're the government as it were and so when someone's the government you know I correct? Yes. All right. So what I saw here is and I think that the district court picked up on this some sort of sharp practices that I would expect to see more with lawyers than someone from the government as it were. Not wanting to say who the people saying that you had a certain number of people and that well I we don't have to tell you who they are. Well that just didn't doesn't seem very consistent with if your purpose is to eliminate discrimination why wouldn't you say that or why and then it turns out you don't have as many people either. Well your honor I hear your concern. And so I mean at some point we expect government players to come here and it's it's with a government you can't know what you don't know and so it it it's always concerning if you feel that the government is over amping on things or trying to put a shield around so that judges or the courts can never know or the other party you know no one wants well I can't say that you know but if the point is to discriminate is to eliminate discrimination and it's it's different than say an attorney that's suing for money on the basis of individuals and might want to not have certain things come out. How do how do we test you on that? In two ways. And the first is about the facts of the case but the second is unfortunately your honor I understand your concerns but I think that you're not writing on a blank slate. The Supreme Court in mock mining said it's up to the EEOC what to disclose during conciliation. Mock mining specifically argued to the Supreme Court in its opening brief and in its reply including a footnote 11 this checklist of things EEOC had to do to have good-faith conciliation and that included the concern that you raised which is EEOC has to tell us who it is we're talking about has to tell us what happened to these people and cannot use discovery during litigation to find additional victims but the Supreme Court rejected that checklist so the Supreme Court has already but I don't think it means that you can say you have 19 people when you don't have 19 people you know that and say well we're not going to tell you who they are anyway I mean how does that eliminate discrimination? Well the Supreme Court said that we don't have to identify the victims during conciliation so I'm not sure how you can reconcile the result I see that you clearly want to get to with mock basically trust us and we can do whatever we want to do and we don't and we don't need to tell you anymore I think trust but verifies what the Supreme Court said in mock mining and and here in this case this is not a case where we filed lawsuit and the employer said gee I'm so I'm shocked you just raised a claim of sex discrimination I've never heard about that before this is a claim where our lawsuit talked about sex discrimination and harassment harassment our investigation was sex discrimination harassment and excuse me both and they match perfectly and during the conciliation we told them we estimate the class was about at least 19 women the lawsuit only went to 25 women so this isn't a CRST case where we might have had a handful of charges and the district court was very frustrated when we eventually named 270 claimants in this case the scope of the lawsuit very closely matches the scope of investigation in the cause finding and in the cause finding we mentioned the three units that are housed in Florence West and CACF and we said that there was a class of women sexual harassment and retaliation and and that gave them the notice that they needed to know what it was that we were after and they were able in conciliation to understand what kind of violations we were looking into and for whom we sought relief and that's the purpose of the investigation is to frame things for the letter of determination which is frames it for conciliation so I just have to disagree to the extent you're suggesting that they were surprised during the lawsuit and that we were hiding the ball in a way in an inappropriate way I also your honor I see I've used up 13 minutes of my time so I'd like to reserve the rest for rebuttal if I can I think you've used you're counting down from 20 okay well then if I have a few more minutes and I'd like to say also I just think that geo is the heart of their argument as I understand on appeal is not about conciliation as I've just said but it's actually about an investigation and this notion that we have to identify everybody before we filed a lawsuit but that is inconsistent not only with mock mining but we think it's inconsistent with EUC versus general telephone which we cite in our opening brief where we had received four charges of discrimination but we filed on behalf of women for different Western states and we think it's also inconsistent with decisions from this court and Bruno's lucky stores about the 300 days I can segue into that and so judge Bolton ruled that the 300 days for the class began not from the date of the chart but from the letter of determination and work backwards from that we think that judge Bolton erred in that ruling there's no support for that in the statute there's no Supreme Court or circuit authority that holds that 300 days starts from when we don't have so we're fashioning it we don't really have for I mean the argument that I would think would be the best argument is the 300 days that you're arguing is a more generous is more generous for the the claimant or the victim or the whatever you want to say right in our view yes because here it'll allow us to scoop into claiming to otherwise would be cut out and that some of the Supreme Court cases have seemed to be more employee oriented in terms of setting the statute of limitations when it comes to hostile work environment correct maybe I think our argument is more refined which is that it is the the charge that really sets off the investigation and the cost finding and it's beyond dispute that we can sue for violations ascertained during the course of the investigation so once we have a charge we inform the employer of it then the employer is on notice that we may find other things during the investigation and may seek relief for we additionally find out so it's consistent to have the 300 days start from the from the charge itself which is really the operative document in the case and not the letter of determination formally notifying the employer because that gives you all that it gives you 300 back from the from the charge and then everything forward to the letter right well that's another dispute we have a ruling is that she did cut off things as of the letter of determination so that we can't seek relief for anything that happened after the letter of determination and we disagree with that well you just what's what's your best authority on that I mean essentially on both of those there isn't we're extrapolating for both of the arguments correct so what would be your best extrapolation on that point our best extrapolation is to use the philosophy and the thinking that went behind the piggyback rule which is that we only need one charge of discrimination in a private action suit and then still other claimants who didn't file a charge can join in because we want to avoid piecemeal litigation we don't want to waste the courts resources or EEOC resources and so judge Bolton's ruling does that in the sense that every time somebody at geo a female correctional officer who's already been named experiences retaliation she has to go back to EEOC file another charge another investigation another finding of discrimination more conciliation and instead of joining the one that's already in progress yes your honors may please the court Chris Carlson for the state of Arizona mentioned or miss Ocellano mentioned that the EEOC proposed two arguments are on their appeal we proposed one additional argument and that was that Arizona grants independent authority for the state to pursue class actions for with unidentified individuals that authority is contained within Hughes and it is independent within Hughes Hughes is specifically talking about Arizona law it's a specific interpretation of ACRA and because ACRA doesn't have a 707 provision Hughes is staying saying specifically that Arizona's authority to bring class actions exists within ACRA itself they do that for a few reason one is that the Arizona Civil Rights Act is they characterize it and it's true is remedial legislation entitled to liberal construction in order to eliminate discrimination also the Arizona courts have specifically interpreted the ACRA in Hughes to allow us to pursue class actions because otherwise class-wide discrimination uncovered during the course of investigations would go unremitied and it would lie in contradicting the contradiction to hold that the ACRD the division the state may file a legal action only on an individual basis on behalf of charging parties given the ACRD is obvious broad power to investigate and enforce the statute the Arizona statute we believe your question let's say suppose that who you call it accurate is that how you say it Arizona Civil Rights Act okay well ACRD slash EEOC investigated the charge by one employee but didn't find other aggrieved employees during this investigation could ACRD slash EEOC nonetheless bring a nationwide class action against an employer based on that single charge why or why not well nationwide class action we'd be limited to the state which we're in because that's the scope of our authority but also no we have to identify a scope of discrimination and the scope in this case was a hostile work environment that was so pervasive that we assume we didn't assume we found that every woman every woman at the geofacilities that were identified Florence West and CACF were exposed to that hostile work environment and could potentially bring a claim they were there is a reasonable belief that a reasonable person would have found hypothetical said what if you only found one could you bring a class action no I don't believe that we could bring a class action under that scenario because then we would be limiting the scope of what we were able to identify to that one person whereas here but then to maybe then that makes a hostile work environment and then it could be everyone or what but I think we have to that is so widespread that any number of women could have suffered from it and that it's impossible to identify which of those women individually did suffer from it because we have a one-year statute of limitations which limits our ability to figure out to identify so there's not a certain number that makes it hostile work environment I believe that it's the conduct itself that makes it a hostile work environment there's a whether a reasonable person would believe that the acts are so egregious so severe or pervasive that they create a work environment that would be objectively unreasonable to any woman and that's what we did here and actually going back to something you mentioned to Miss Ocelano we found in this case the scope that we found in this case was that almost every woman who worked at those two facilities could have been exposed to the hostile work environment and likely was exposed to the hostile work environment we endeavor to eliminate unlawful employment practices we don't try to find a specific number or tie the relief that we're seeking to specific people we did mention that at least 19 women were exposed to that because our evidence the scope of our investigation indicated that every woman probably was exposed to that hostile work environment and that was what we back pay in this case of the state but when I believe when the ESC asked for the six million dollars is not to seek specific redress for 19 women or 20 women in this case at $300,000 per woman yeah but you looked at the statute and $300,000 and you multiplied it by the number of people right and that is certainly what happened to that number correct but the number I believe and this certainly how we function within the division the number is the number that we feel is appropriate to in the unlawful employment practice it is not to seek specific redress for any individual woman but that number certainly seemed to take if you take the 300,000 and you multiply it by the number of people that you have that certainly seems like that doesn't correlate to what you're saying I believe that that number that we came up with in that case was the number that we felt was appropriate to and the and then surreptitiously hit in 19 women we were saying that potentially 144 women which were the total number that we ultimately sent the class notices to could have been exposed to that hostile work environment and that was really a guess based on the participation level not any underlying knowledge of whether or not you know 19 specific women existed because really the scope of the reasonable cause determination indicates and our investigation indicated that it could have been far far higher than that that was really just based on who we felt would step forward given the level of retaliation that the people who had stepped forward were experiencing in the work environment may it please the court I'm Philip Ross and I represent the appellee the geo group your honors by statute the ESC and the ACR D excuse me are authorized to initiate litigation and pursue claims on behalf of allegedly aggrieved persons but they can do so only if those agencies have already fulfilled the mandatory statutory procedural requirements which include first investigating and then making a reasonable cause determination before they file the lawsuit the district court here correctly found the agencies did not meet that statutory requirement with respect to the 19 dismissed claims which are at issue here today now I need to begin by it seems so like you're trying to set a standard which I don't think that the Supreme Court would set in terms of you're looking at it like they have to exhaust every single one in the same way that you can raise exhaustion if it were not the EEOC well and I I just don't see I don't see the Supreme Court coming to that conclusion even justice Thomas who's the former head of the EEOC I don't think I don't think you'd have his vote well your honor the Supreme Court has said in Occidental life that the ESC is required by law to refrain from commencing a civil action until it's just it's discharged its administrative duties and the administrative duties require that they investigate a claim you know and in they have to investigate the claim in order to make a rational determination whether or not there's any cause to believe the claim has merit and you have to have an investigation before you file a lawsuit. Is the case law clear that that applies to a class action to every member of the class? Well first of all what calling this a class act. What's your best case on that? Well CRST is our best case because it's the exact same situation that occurred here and while the EEOC talks about a class action I think that's really a misnomer. They found in their determination letter that Ms. Hancock and a group of other women were allegedly harassed and retaliated against. They did not find that the alleged harassment and retaliation was so pervasive that it constituted a pattern of practice within this workplace. They didn't bring a 707 claim they brought a 706 claim. It's a different statute. They did not find in the determination letter that there was this pervasive harassment. They didn't bring a class action. They brought claims on behalf of aggrieved individuals, not the class. But I do need to go back for a moment to clarify what the issue is here before this court. The district courts ruling had two parts to it, a number of parts to it, but one part was that it found that the EEOC and ACRD had failed to adequately conciliate claims of six women, Ms. Hancock and five others, who they knew about during the course of the investigation. It didn't dismiss any of those claims. The EEOC and the ACRD did not appeal that decision, which is moot anyways. That part of the district court's decision about a failure to adequately conciliate claims isn't part of this appeal. What this appeal is about is a district court separate finding that the EEOC and ACRD had completely failed to fulfill their statutory obligations to conduct an investigation into the claims of these 19 new individuals that they tried to add later during the course of the lawsuit, had failed to make any reasonable cause determination with respect to these 19 dismissed claims that the EEOC and ACRD tried to add later during the course of the lawsuit, and also failed to conciliate. But inherent in your argument, it seems to me that you're saying that each person has to be exhausted, each person has to be that individual, and I'm not sure you're right on that. The EEOC and the ACRD don't have to identify by name particular individuals, and that's a false argument that's being made here. The district court didn't dismiss anyone because they weren't identified by name. Ms. Hancock's the only person who was identified in the reasonable cause letter. There were five other people who the district court allowed their claims to proceed because the district court, because the EEOC knew of their claims, even though they hadn't necessarily identified them by name. The district court dismissed only the claims of individuals who the EEOC knew nothing about during the course of their investigation, and only discovered a year after they filed the lawsuit when they attempted to expand the claims by sending out mass mailing solicitation letters to GAO employees saying if you were subjected to any kind of discrimination or you have any knowledge of any harassment, come forward and let us know and we'll bring new claims. They could not have investigated the claims of any of these 19 individuals. They could not have made any kind of reasonable cause determination with respect to those 19 claims because they didn't know anything about them. They didn't know the existence of these individuals. They didn't know of the existence of the... So why isn't the remedy then send it back and conciliate rather than just dismiss? Well, it's not conciliate. They haven't... It's not simply... This is not a case like mock mining. But they got dismissed, right? They got dismissed because the EEOC had never, and the ACRD, had never conducted any kind of fact finding as to those individuals prior to filing the lawsuit, had never made a reasonable cause determination prior to finding a lawsuit. This is very different than the mock mining situation where the court was faced with a case where the claims at issue had been investigated pre-filing. Reasonable cause determination has been made pre-filing. The only thing that the EEOC had not done was arguably adequately conciliated it. It's one thing for the Supreme Court to say under those circumstances, a stay would be appropriate because all that's left to do is engage in the conciliation action. All the other requirements have been met. There's actually a provision in 706 which allows the district court, in its discretion, to stay in action to allow voluntary compliance. That's what the Supreme Court made reference to in its decision. There is no similar language which says that the EEOC and ACRD can wait until a year after the lawsuit has been filed and then for the first time try to go out and find new and different and additional claims and then add those to the lawsuit without ever having made any kind of factual investigation before filing the lawsuit, without having made any kind of reasonable cause determination before filing the lawsuit. That's a fundamentally different proposition that the Supreme Court in mock mining was not addressed with. They simply had the case where there was investigation, reasonable cause finding, and then a failure to adequately conciliate according to mock mining. But that's not our case here. If I understand, you say this is not a class action? No. This was a find — the reasonable cause determination that was made was that Ms. Hancock and a group — they called it a class in the determination letter — but a group of other individuals, which have now been identified as 19, apparently, were allegedly harassed and there was a failure to prevent harassment and there was retaliation. Essentially a hostile work environment and retaliation. Yes, absolutely. Because, I mean, one of the people or whatever after the — didn't she ultimately get fired? I think one of the — Yeah, that may have been part of the retaliation. A hostile work environment generally isn't something that applies to one person. Yeah. It's something that applies generally. No, a single individual can be subjected to a hostile work environment. If I'm a supervisor and I'm harassing a particular woman who works for me, right? Well, that's generally direct harassment. I mean, a hostile work environment means the environment in an employee's establishment. But there wasn't a finding that the environment at GEO was so pervasive that all women were impacted. That isn't the finding in this reasonable cause of termination. The reasonable cause of termination sets forth 11 incidences involving Ms. Hancock and other unidentified people where the investigation disclosed conduct that the agencies believed created a reasonable place for believing a violation of the law. The agency believed that there was a hostile work environment. With respect to those 19 individuals. So then you would have them just start all over with the other people and then they'd have to bring another claim. Yes. So the claims of the additional 19 people only arose because the EESC went out and solicited them a year after the lawsuit was filed. But after they had determined — after they had — they investigated several claims, determined there was a hostile work environment, and then I think she said it's the piggybacking and — But that the investigation, if they made one, occurred after they filed the lawsuit. It wasn't pre-lawsuit. The statutory requirement is that the EESC conduct an investigation pre-lawsuit and make a reasonable cause of termination pre-lawsuit. Well, and their argument — That's essential — I agree that they did, and they made that determination. But as a result of it, there are other people that come to light, and that because of that they're a government agency, which is established to eliminate discrimination, that then they shouldn't have to go back and start a whole other lawsuit. I mean, they don't even take very many lawsuits. I mean, most of the time we get cases where — that clearly people go ahead and win and they get their right to sue letters or any number of things. I mean, they don't do very many cases. Your Honor, I think it's important to understand the statutory scheme here. Congress, in enacting Title VII and 706, required the EESC to engage in pre-lawsuit conduct, administrative activities, the investigation, the reasonable cause finding, conciliation following that, because Congress indicated that its preferred method for eliminating employment discrimination was through the administrative rather than judicial process. That's why Congress requires the EESC to do these things pre-litigation. But there isn't — The fact — But you're importing into it, and I don't think there's any — that you're saying that they have to do that with every single person that ends up being a part of the lawsuit or those people are out, or they have to be a part of another lawsuit, right? I think that if those individuals wish to have their claims properly investigated and reasonable cause findings made, they would have to bring their own claims, and in fact — They have to bring their own claims for every single person, though, that the EESC would be required on, every single person. They are allowed to bring claims on behalf of every single person that they identify — not identify, but whose knowledge they know during the course of the investigation. What they cannot do is, after the lawsuit's been filed, troll for new and different claimants who they knew nothing about prior to filing the lawsuit, who they made no attempt to engage in any fact-finding about prior to filing the lawsuit. Nothing in the — Is there a case that says that specifically? I'm sorry? Is there a case that says that specifically? CRST says that, the decision of the Eighth Circuit, which we believe is sound and ought to be adopted by this Court as well. Okay. We're not out of time. I'm not out of time. No. Let me, if I can — Don't feel you have to use it all. No, no, no. There are several. Thank you. Again, I've mentioned that I don't think mock mining requires a stay here because it's a different situation. The EEOC and the ACRD argue that it's too burdensome for them to try to go out and actually seek out and investigate potential claimants during their investigation. But, frankly, if the EEOC and the ACRD put as much resources into the investigative phase as they do into the litigation phase, much agency litigation would become unnecessary, and Congress's preferred goal of actually resolving these kinds of claims during the agency process might actually be achieved. Also, the cases that EEOC's counsel mentioned, the Lucky case, the General Telephone case, we believe actually support the district court's finding here because in both of those cases, in the General Electric case, the court allowed the EEOC to bring additional claims that were ascertained during the course of the investigation. These 19 claimants' claims were not ascertained during the investigation. The EEOC didn't even know of their existence or their claims. In Lucky, the court said that the information supporting the additional claims the EEOC brought were developed during the course of the investigation. Again, there was no information about these 19 claimants that first were discovered by the EEOC a year after the litigation was filed. So that's, again, the district court's decision is, again, consistent with Lucky. Again, nothing in the statute says the EEOC can go out and, after a lawsuit is filed, for the first time decide to try to expand the claims that it did make determinations about to raise new claims and to allege additional discrimination. That's inconsistent with all sort of fundamental notions of jurisprudence. You don't get to file a claim before you've made any kind of a determination whether or not there's any basis for bringing the claim. You can't do that civilly. That's sanctionable under Rule 11. The situation... Arguments you're making apply equally to the Arizona Civil Rights Act? So let me address, because I have five minutes left, the Arizona Civil Rights Act claim. First of all, the argument that the Arizona Civil Rights Division, the ACRD, is making that somehow the ACRA is different than Title VII with respect to these pre-statutory requirements and, therefore, demands a different result is without merit for a number of reasons. First of all, they've waived that argument. During the motion for summary judgment proceedings, they never claimed that the ACRA's pre-lawsuit requirements were different with respect to conducting an investigation, making reasonable cause determination before the lawsuit was filed than under Title VII. In fact, they argued that Title VII and the ACRA were the same in those regards and, therefore, Title VII cases were equally applicable. By having failed to make the argument to the district court below, they've waived the argument, which they've tried to make now for the first time. The district court also properly found that the ACRA's attempt, ACRD's attempt to raise this argument for the first time in their motion for reconsideration of the motion for summary judgment was improper for both procedural and substantive grounds. This Court has, in a number of cases, made clear that raising an argument for the first time in a motion for reconsideration of a summary judgment ruling does not preserve that argument for appeal, and that's exactly what the ACRD has attempted to do here. Further, the ACRD did not appeal the district court's denial of their motion for reconsideration, and so they've waived the arguments made in that motion for that reason as well. But even if they hadn't waived it, and they clearly did, we believe and submit, the case law that they cite to, the Hughes case and the Olson case, do not support their position. The Hughes case only says that the ACRD can bring a class action without meeting the requirements of Arizona Rule 23, which is similar to FRCP 23. At no point in the Hughes decision does the Hughes case talk about the ACRD's statutory requirements of investigation and pre-lawsuit determinations. And the district court properly found that the Hughes case does not speak to, let alone rule on, an issue that was never placed before it. The Olson case is even more far afield. In that case, the decision was simply that the lower court had found that a particular set of facts weren't sufficient to raise a claim under the Arizona statute, and the Supreme Court ultimately reversed that, saying the facts claimed by the allegedly aggrieved person were sufficient to state a cause of action. In fact, Olson supports the district court's ruling because it also says that the ACRD can pursue claims that are coextensive with their investigation. Here, the claims were not coextensive with the investigation. I have two minutes. Let me address, if I could quickly, the statute of limitations issue. And let me just say, I want to ask you, one case that it's a 1984 case, but with respect to the 300-day issue, how do you distinguish Domingo v. England Fish, which indicated that the proper starting date of a class action is 300 days prior to the date that the charging party filed her charge? But again, this, with all due respect, this isn't a class action. This was not a 707 claim where they found a pattern of practice on behalf of all of the individuals, all of the people who worked there. They found that Hancock and a group of other people, which ended up being 19, had been subjected to this conduct out of hundreds of people who worked at that site. The cases that have addressed the issue as to the backward limitation period for people whose claims were not dismissed here, but who did not file charges themselves, is 300 days from the date the employer later receives notice that the claim investigation or the agency proceeding has expanded beyond the original claims. That was during the reasonable cause letter. The EEOC's argument that it ought to be 300 days under a 706 action from the time of the original charge, they've argued that in a number of cases, and no court has accepted that. You look at the cases we cite in our briefing. They reject that. They rather find that the 300-day period is appropriate based upon having a reasonable limitation. The case you cited, though, is not a Ninth Circuit case, right? No, they're not. They're not. And we believe it ought to be adopted by this court. And then finally, five seconds, with respect to the limitation period for acts occurring after the reasonable determination letter, the agencies have again waived that argument in the district court during the summary judgment proceeding. At no point did they dispute the applicability of the standard that the district court applied, which was that acts occurring after the determination letter were outside the relevant period. They never argued anything to the contrary until after the summary judgment ruling. And again, they don't preserve the issue. They have waived it. Thank you, counsel. Thank you, Your Honors. Your Honor, I'd like to take two minutes and leave one for Mr. Carlson. But as Your Honor has pointed out, there's nothing in the statute that requires us to individually investigate, find cause, and conciliate. There's nothing from the Supreme Court precedent that requires that. There's nothing from Ninth Circuit precedent that requires that. The only case the GO has for that proposition is CRST. But we have cases explicitly that we cited that allowed us to use discovery to do what plaintiffs do in Rule 23 class action cases, which is to utilize discovery to find additional victims of the same kind of discrimination for us that we investigated, found cause, and conciliated. We cited it in our brief syntax, which allowed us to use discovery to find additional claimants. American National Bank, the Fourth Circuit case, where we looked at discrimination in a few branches in one city but sued for branches of the bank in other cities we'd never investigated. And the district court opinion states explicitly that we included 55 women, 51 victims that we used discovery to find in that case. We cited the Tenth Circuit's decision, where we were allowed to go forward with our suit under 706 on behalf of a class of aggrieved individuals, even though we had nobody who was identified by name. In UPS, the charging party had settled out, even. We also cited the Third Circuit decision. So we have a mountain of authority, and they have CRST. And CRST, they actually— CRST is from what circuit? CRST was from the Eighth Circuit, and it's a two-to-one decision. So they really have two judges. And Judge Murphy wrote a very robust and, I think, compelling dissent. And we think that decision can't be harmonized with mock mining, so much so that we filed a Rule 60B motion in the district court last month to argue that point. And also, I'd just like to point out that CRST itself relies on cases that are actually about scope. The cases that really kind of got this all going and formed the basis of CRST were Jillian's, Dillard's, and Outback Steakhouse. But those cases allowed us to do what we did here, which is to use discovery to find additional victims of the same kind of discrimination in the same place that we investigated, found cause, and conciliated. What those cases didn't allow us to do was geographically to go too far beyond the scope of our investigation, cause finding, conciliation. And that's not a problem that we have here. One minute for Mr. Carlson. Certainly try to be very brief, Your Honors. First, going to the waiver argument that counsel makes, we believe that this case was fully briefed and considered by the court. She allowed full briefing on the motion for reconsideration. Everybody had their say, and she issued a ruling specifically geared towards that. Furthermore, it is claims that are deemed to waive that were forfeited, not Our consistent claim throughout this case has been that Arizona's pre-suit requirements, as articulated by Hughes, do not require the state to identify and investigate each class member's allegation. Furthermore, I believe that this is a pure question of law, a misapplication of Arizona law, that can be taken up on that basis. Furthermore, in Hughes, when the court said that we could pursue class actions, the dissent responded with some telling language. And the dissent pointed out that the dissent did not believe that that meant that a class-wide claim may be brought on behalf of unidentified persons in the absence of individual charges. That seems to be squarely where the defendant and the district court find themselves in this case. They are arguing that we failed to identify individuals during the course of the investigation, that we cannot pursue a class action on their behalf. I find we've operated under the guiding principles of Hughes for over 30 years. If the court or if the legislature felt that, you know, the unambiguous language of Hughes required amendment or adjustment, they had 30 years and multiple amendments during that time to insert language that would have specified that we also had to identify the individuals during the course of the investigation. They did not, and that's why I believe that Arizona does not have the requirement that we identify individuals during the investigation, especially a hostile work environment investigation, before proceeding to class action on their behalf. Oh, and one more point. In the reasonable cause determination, there were 11 different incidents that were alleged, 11 different incidents which were specified, although that's not all that was contained within the investigation. But those incidents didn't happen in a vacuum. They didn't happen without witnesses. They didn't happen in a way that would have suggested that other women were not also subjected to the hostile work environment that those incidents created. And specifically, the reasonable cause determination also states on ER 132, the witnesses described Tremont's conduct in particular, one of the harassers specifically named, conduct towards respondents, females and female employees is occurring frequently, ranging from several times a shift to daily to, and quote, when doesn't he do it? We had ample evidence to believe that, like I said before, nearly every woman at those two facilities, because of the nature of what was going on there, was certainly have a reasonable cause determination that lays out a scope that encompasses that. Thank you. Thank you, counsel. Thank you all. The case to be argued will be submitted. The court will stand in recess for the day.
judges: Reinhardt, Tashima, Callahan